IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CURTIS NORTON, ) | |
| ) | |
| Plaintiff, ) | Case No. CV09-58-N-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| KOOTENAI COUNTY, et al, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court in the above-entitled matter is are cross motions for summary judgment (Docket Nos. 15, 16 and 19). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

Background

Plaintiff Curtis Norton ("Norton") filed a Complaint alleging violations of his First Amendment constitutional rights by the Kootenai County Adult Misdemeanor Probation Department, individual probation officers Marc Anderson and Mike Wall, and Kootenai County (collectively referred to as "the Defendants").

Plaintiff was sentenced on August 6, 2008 to two years supervised probation in Kootenai County Criminal Case CR-2008-16670 for the offenses of driving without privileges and excessive DUI. The court ordered Norton to comply with all conditions of supervised probation that the Probation Officer directs, to complete a drug/alcohol evaluation and to complete a drug/alcohol treatment program. Defendant Marc Anderson ("Anderson")

MEMORANDUM ORDER - Page 1
09ORDERS\NORTON_SJ.WPD

was assigned as Plaintiff's probation officer. Anderson has been a probation officer since July 2006.

The Probation Agreement sets forth the conditions of his probation. One condition listed was that Norton was to attend two (2) verifiable AA meetings per week. Norton was ordered by the Court to contact the Misdemeanor Probation Office within three (3) business days, but did not make contact until approximately four weeks past the court ordered date.

Anderson met with Norton on or about October 7, 2008 and the Probation Agreement was presented to Norton. Anderson explained all the conditions and Norton signed the Probation Agreement. At no time did Norton inform Anderson that he had religious-based concerns or objections to attending AA meetings. Anderson met with Norton in November and Norton did not inform the Probation Officer of any religious concerns with the AA meetings.

Norton was contacted on November 24, 3008 by law enforcement officers related to his drinking. Norton failed to inform his Probation Officer, as required, of his contact with law enforcement officers and his alleged drinking also violated the condition that he abstain from the use of alcohol and not enter establishments were the primary item for sale is alcohol. On December 2, 2008, Norton was questioned about the events of November 24, 2008 by Anderson. At no time during this meeting did Norton object to attending AA meetings. On December 3, 2008, Anderson filed an Affidavit of Probation Violation (Supervised)/Order to Show Cause regarding alleged probation violations.

On January 8, 2009, Anderson again met with Norton. Norton did not express any religious-based concerns or objections regarding AA meetings. On or about January 28, 2009, Anderson received a letter from Alliance Family Services notifying him that Norton had been admitted to their Level I Outpatient Treatment Program. Prior to receipt of this letter, Anderson had never been asked by Norton about alternative sober treatment/support groups. Anderson informed Norton that Alliance Family Services' focus is on treatment and is different from a sober support network like AA.

On January 28, 2009, Anderson again met with Norton. At no time during this meeting did Norton express any religious-based concerns or objections to attending AA meetings. On February 11, 2009, the Complaint was filed by Norton. Prior to being served with the Complaint, Anderson met again with Norton on February 12, 2009. At no time during this meeting with his Probation Officer did Norton express any religious based concerns or objections to attending AA meetings.

In his deposition, Norton testified that he does not remember any specific complaint to his probation officer regarding his religious-based concerns or objections.

Norton argues in his motion for summary judgment that his First Amendment rights were violated when he was ordered to attend Alcoholics Anonymous ("AA") meetings as a condition of his probation Plaintiff further argues that the Defendants cannot claim qualified immunity since reasonable probation officers would have known that the clearly established law in effect at the time constitutionally prohibited mandatory AA attendance. Norton claims the county failed to adequately train its probation officers.

Defendants respond in their motion for summary judgment that Norton was not "compelled" to attend AA and therefore there was no violation of the Establishment Clause. Defendants maintain Norton never told his probation officer that he was agnostic and objected to attending AA meetings on religious grounds nor that he ever requested alternative sober support network programs. Defendants argue that Norton's probation was revoked for other violations so he is judicially estopped from claiming that his constitutional rights were violated. Finally, Defendants maintain Plaintiff's claims against the municipality for the constitutional violations or for a failure to adequately train and supervise probation officers are without factual or legal support.

## Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

---

[1] See also, Rule 56(e) which provides, in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

Analysis

A. Section 1983 Claims in General

The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to harmed parties. See Wyatt v. Cole, 504 U.S. 158, 161 (1992). To state a claim under § 1983, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law. Id. Acting under color of state law is "a jurisdictional requisite for a § 1983 action." West v. Atkins, 487 U.S. 42, 46 (1988). In this case, it is not disputed that the named Defendants were acting under color of state law. Therefore, the question becomes, did the Defendants' actions deprive Plaintiff of a right, privilege or immunity secured by the Constitution or federal law.

B. Qualified Immunity

Certain Defendants have raised the defense of qualified immunity. Law enforcement and probation officers are entitled to "qualified immunity" for their actions within the scope of their employment "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). The purpose of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." Saucier v. Katz, 533 U.S. 194, 200, 202 (2001). On the other hand, this privilege allows redress where clear wrongs are caused by state actors. Id. "The privilege is an immunity from suit rather than a mere defense to liability, and like an absolute

immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. at 200-01. "As a result, [courts] have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation," long before trial. Id. at 201, see also Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) (citing Hunter v. Bryant, 502 U.S. 224 (1991)).

The initial question in determining whether an officer is entitled to qualified immunity is whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, (2001); Billington v. Smith, 292 F.3d 1177, 1183 (9th Cir. 2002). If not, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. If, however, a violation could be established under the facts presented, the next step is to determine whether the right was "clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." Id. at 208. Plaintiff bears the burden of establishing the rights violated were "clearly established." Houghton v. South, 965, F.2d 1532, 1534 (9th Cir. 1992).

"[S]ection 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, the Court will analyze the constitutional rights Plaintiffs allege were violated by the Defendants.

C.  Claims Against Municipalities

To make a claim against a municipality for a § 1983 violation, four criteria must be satisfied:

> (1) That [the Plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference" to the Plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation.."

MEMORANDUM ORDER - Page 6
09ORDERS\NORTON_SJ.WPD

Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton v. Harris, 489 U.S. 378, 389-91 (1989)).

A municipality may not be held liable under § 1983 solely because it employed a constitutional wrongdoer. Monell v. Dept. of Social Services, 436 U.S. 658 (1978). Furthermore, a municipality cannot be held liable under § 1983 where no constitutional violation has occurred. Sweaney v. Ada County, 119 F.3d 1385, 1392 (9th Cir. 1997).

D. Plaintiff's First Amendment Violations

The Establishment Clause of the First Amendment guarantees that the "government may not coerce anyone to support or participate in religion or its exercise." Lee v. Weisman, 505 U.S. 577, 587 (1922). Forcing a probationer to participate in religion-based substance abuse programs, such as the twelve step program used by AA, violates the Establishment Clause of the First Amendment. See Warner v. Orange County Dept. of Probation, 115 F.3d 1068 (2nd Cir. 1997); Kerr v. Farrey, 95 F.3d 472 (7th Cir. 1996); Inouye v. Kemna, 504 F.3d 705 (9th cir. 2007). The question in this case is whether the probationer is required to notify the probation officer of his/her objection to the religious-based AA program in order for an Establishment Clause violation to have occurred.

In Inouye, the parolee had "long objected to compelled participation in religion based drug treatment programs." Inouye at 709. Inouye was involved in an ongoing prison lawsuit involving alleged violations of his First Amendment rights over mandatory religion-based treatment programs at the time AA meetings were imposed as a condition of his parole. Id. at 716. Additionally, prior to being paroled, Inouye's counsel had sent a letter to the Hawaii Paroling Authority expressing Inouye's opposition to be place in a religion-based treatment program as a condition of his parole. Id. 710. Inouye tested positive for drug use during his parole and was ordered to attend the Salvation Army's Addiction Treatment Services which requires participation in AA meetings. In part due to Inouye's refusal to participate in the treatment program, a warrant was issued for Inouye's arrest. The Ninth Circuit assumed Inouye's participation in the AA program was compulsory since he had given advance notice

of his objection to religion-based drug treatment programs, he was ordered to continue in the AA meetings after he threatened to sue program officials, and there was no evidence Inouye was told he had a choice of drug treatment programs besides the Salvation Army program. Id. 711. Based on the facts presented, the Ninth Circuit held that the parole officer was not entitled to qualified immunity as the law was clearly established that compelling an inmate to attend AA meeting after he voiced religious-based objections was unconstitutional.

Both sides in this case argue that Inouye should be applied and summary judgment should be granted in each side's favor. The Court has reviewed Inouye in detail as well as the other cases cited by the parties and finds the holding in Inouye is not as broad as Plaintiff argues and that notice of a First Amendment objection is required before a defendant is being "compelled." Stated another way, Inouye does not stand for the proposition that a Court can never order a defendant to attend AA meetings as a term of their supervision. Rather, Inouye stands for the proposition that compelling a parolee or probationer to attend AA meetings when they have adequately set forth religious-based concerns is unconstitutional behavior.

In Richard v. Border, 2008 WL 4936483 (D. Or. 2008), the Ninth Circuit applied Inouye and held that failure to object on religious grounds to a living assignment means that a person is not being "compelled" and no violation of the Establishment Clause has occurred. In Richard, the parolee alleged his First Amendment Rights were violated when he was required to live at the Eugene Mission, which requires attendance nightly at a one-hour non-denominational church service. Id. at *1. Richard had originally requested to be placed at the Eugene Mission and once it appeared he was not willing to live there, his probation officer indicated Richard could propose another living arrangement. Id. at *2. Richard never told his probation officer that he had a religious-based objection to being housed at the Eugene Mission and never proposed another living arrangement. Id.

It is undisputed by the parties that the twelve step AA program involves reference to a "higher power. " As noted by Judge Tallman in his concurrence in Inouye, the ''principal and primary effect' of encouraging participation in AA is not to advance religious beliefs but to treat substance abuse." Id. at 717 (citing O'Connor v. California, 855 F. Supp. 303, 307

(C.D. Cal. 1994). So unless the supervising probation officer is aware of probationer's religious-based objection to AA meetings, the fact that a probationer is ordered and agrees to attend two AA meetings per week in his Probation Agreement is not a constitutional violation.

In this case, the Plaintiff's testimony under oath does not create a genuine issue of material fact regarding notice to the Probation Officer. Norton never states he notified his probation officer regarding his objection to the religious-based content of the AA meetings. Norton only says he might have made some comment about "Bible thumping." In fact, Norton attended several AA meetings and did not complain to his Probation Officer regarding the content of the meetings he had attended.

The Probation Officer kept notes after each of his meetings with Norton. None of the notes indicate that Norton raised an objection to attending AA meetings. The Probation Officer's affidavit indicates he has no recollection of Norton making any objections to AA meetings when he signed the Probation Agreement and went over the terms and conditions or at any other meeting with Norton. The first time the Probation Officer was aware of Norton's First Amendment claims was when he was served with the Complaint. The Probation Officer states in his affidavit that he did not care what sober support group Norton attended as long as he attended one. There is a non-secular program called "Beat Your Own Addiction" that is available, but the probation officer recommended AA because he was not aware of any religion-based objections that Norton had to AA.

Another reason that Plaintiff was not "compelled" to attend AA meetings was that the sentencing judge appears to have required Norton to enroll and complete any recommended substance abuse program.[2] When the Probation Agreement was reviewed with Norton, he could have objected and suggested another sober support program but he did not do that. In

---

[2] Exhibit A to the Affidavit of Marc Anderson, Docket No. 15-5 indicates that supervised probation was ordered for two years and included the conditions that Norton obtain a substance abuse evaluation within 120 days and enroll in "any rec" [any recommended] program with completion within 180 days. Norton was also ordered to all general conditions of supervised probation The Court notes the state court judge's handwriting is difficult to read but this interpretation of what "any rec" means seems consistent with the terms identified as court ordered terms in the Probation Agreement, Exhibit D to Docket No. 15-5.

fact, at the January 28, 2009 meeting with his probation officer, Norton indicated that he had attended four AA meetings and that he had been in alcohol treatment at Alliance Family Services. No objections to AA were disclosed to the probation officer. While Norton may have suggested the Alliance Family Services program be substituted for AA meetings, it was explained that the purpose of AA meetings was not treatment but sober support so the Alliance Family Services treatment could not replace the required AA meetings.

Finally, Norton's supervised probation was not violated based on his lack of attendance at AA meetings. He was violated for other reasons that had nothing to do with his alleged religious-based concerns about AA.

For all these reasons, the Court finds there is no genuine issue of material fact regarding whether Norton's First Amendment rights were violated. The record is undisputed that Norton did not notify his probation officer of his religious-based objections to the requirement to attend AA meetings and he requested no alternative sober support unit although he could have done so. Therefore, Norton was not "compelled" to attend AA meetings and his Establishment Clause rights were not violated.

Having found no constitutional violation, the Court need not reach the issue of whether the probation officer was entitled to qualified immunity or whether the Plaintiff is judicially estopped from making his First Amendment claims. Because there is no genuine issue of material fact regarding the lack of notice to the Probation Officer of Norton's religious-based objection to AA meetings, the Defendants are entitled as a matter of law to summary judgment in their favor.

E. Plaintiff's Conspiracy Claim under 42 U. S. C. § 1985

Norton next alleges the Defendants conspired to interfere with his civil rights in violation of 42 U. S. C. § 1985. Defendants moved to dismiss this claim arguing Plaintiff has failed to satisfy the requirements for a conspiracy claim. Plaintiff did not respond to this argument in his responsive briefing to Defendants' motion for summary judgment, so this failure to respond can be deemed consent to the dismissal of this claim. Further, the Court

agrees and adopts as its own analysis the Defendants' discussion of the subsections of 1985 and how they are not applicable to the facts in the case at bar.

F.  Plaintiff's Municipality Claim

As to Plaintiff's claims against Kootenai County, a municipality cannot be held liable under § 1983 where no constitutional violation has occurred. Sweaney v. Ada County, 119 F.3d 1385, 1392 (9th Cir. 1997). In this case, the Court has determined that no violation of a constitutional right occurred, therefore, the claims against the municipality must also be dismissed as a matter of law.

Moreover, the Court finds Plaintiff has failed to carry his burden to establish via evidence that the municipality had a policy or custom which was the moving force behind the alleged constitutional violations. A plaintiff is required to provide evidence of a "formal policy" or "widespread practice" in order for a municipality or local government unit to be held liable under § 1983. Nadell v. Las Vegas Metropolitan Police Dept., 268 F.3d 924 929 (9th Cir. 2001). A custom may be inferred from "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir.1992). However, "[a] plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." Davis v. City of Ellensburg, 869 F.2d 1230, 1233 (9th Cir.1989). No evidence of a policy or custom to violate probationers' First Amendment Rights has been substantiated by Norton to create a genuine issue of material fact, so this cause of action must be dismissed.

G.  Plaintiff's Failure to Adequately Train and Supervise Probation Officer Claim

Defendants argue the Plaintiff's claim relating to failure to adequately train and supervise probation officers should be dismissed since no constitutional violation occurred and Plaintiff has not identified any policy or custom of the county which supports a finding

the probation officer was not properly trained. Plaintiff did not respond to this argument in their responsive briefing, thereby conceding to the dismissal of this claim.

The Court agrees Norton has failed to show a constitutional violation by the probation officer much less link the constitutional violation to a policy or custom of Kootenai County that resulted from inadequate training or supervision of Probation Officer Anderson. Accordingly, the claim must be dismissed.

### Order

Being fully advised in the premises, the Court hereby orders that Defendants' Motion for Summary Judgment (Docket No. 15) is GRANTED and Plaintiff's Motions for Summary Judgment (Docket No. 16 and 19) are DENIED. The Complaint is DISMISSED IN ITS ENTIRETY.

**DATED: September 11, 2009**

**Honorable Edward J. Lodge**
**U. S. District Judge**